# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**ROBERT ANTHONY HUBBARD**                                            **PLAINTIFF**

**v.**                                                                              **No. 4:11CV83-NBB-DAS**

**WARDEN A. L. SMITH, ET AL.**                                      **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Robert Anthony Hubbard, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have moved for summary judgment; Hubbard has not responded, and the matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and judgment will be entered for the defendants.

### Exhaustion of Administrative Remedies

Before a federal court may address the merits of a prisoner complaint filed under 42 U.S.C. § 1983, the court must ensure that the plaintiff has exhausted his administrative remedies. *See Dillon v. Epps*, 3:12CV561-RHW, 2013 WL 2636731 (S.D. Miss. June 12, 2013); *citing Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*; *citing, Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*; *citing Alexander v. Tippah County, Miss.*, 351 F.3d. 626, 630 (5th Cir. 2003).

In the present case, Hubbard has not provided any evidence showing that he has exhausted the prison grievance process. Though Hubbard did not follow the formal grievance process, the Mississippi Department of Corrections Legal Claims Adjudicator nonetheless accepted the request on November 11, 2009. The claim was set aside because Hubbard had several other grievances pending that, under the Administrative Remedy Program, had to be addressed first. Though he testified in his deposition that he received an adverse final ruling on his grievance, he has not provided any documentation to support that allegation. As such, he has not exhausted his administrative remedies, and, under the Prison Litigation Reform Act, the court must dismiss the instant case.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not

be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Hubbard's Allegations[1]

Though Hubbard has not exhausted his administrative remedies, the court will nonetheless address the merits of his claims. The events in the present case occurred at the Carroll-Montgomery County Regional Correctional Facility ("Carroll County"). On September 5, 2009, Hubbard was accused of possessing a cell phone. Hubbard says that he was leaned back on someone's bed in the open bay area. His back was toward the wall. He claims Defendant Williams "walked up on me [] and he was like what [is] in your hands …" *Id*. at 64. Hubbard responded, "I don't have nothing in my hand." *Id*. Hubbard contends that he tried to stand up as Defendant Williams approached him.

---

[1] For the purposes of this memorandum opinion and final judgment, the court will view the facts in the light most favorable to the non-moving party (Hubbard in the present case). *See Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir. 1993).

He then claims that Officer Williams, who was standing approximately two feet from him, jumped on him, grabbed him from behind, and placed his arms under Hubbard's arms and his hands behind Hubbard's neck. *Id*. at 72-73. Hubbard was in the neck hold for about a minute. *Id*. at 75. He admits that he initially struggled with Defendant Williams; however, Hubbard contends that it was only a "light struggle." *Id*. at 65.

The officers' accounts of this incident differ slightly. James Gillon is a lieutenant with the Mississippi Department of Corrections ("MDOC"). He was a witness to the alleged incident. He issued Hubbard a Rule Violation Report for the incident on September 8, 2009. According to his report, he and Officer Williams were conducting a security search when they witnessed Hubbard talking on a cell phone. Lieutenant Gillon asked Hubbard to give him the phone, but Hubbard did not comply. Instead, he threw the phone into a room filled with other inmates. Lieutenant Gillon immediately attended to other inmates who had rushed to retrieve the cell phone. *Id*. At this point, Hubbard claims he was attacked by Officer Williams. The disciplinary hearing regarding the Rule Violation Report was conducted on September 9, 2009. *Id*. The matter was referred to the District Attorney, and Hubbard was removed from trustee status for six months. *Id*. He did not receive any other punishment. *Id*.

Following the incident and resulting Rule Violation Report, Hubbard filed a grievance against Officer Williams. See Pl. Dep. at 80-81. As part of this process, Plaintiff claims that he sent correspondence to Chief Edwards. Hubbard alleges that Chief Edwards verbally responded to him; however, her response was inadequate. *Id*. Hubbard alleges that on September 15, 2009, he sent a follow-up grievance to Warden A.L. Smith and requested a meeting. *Id*. at 86-87. Shortly thereafter, the Warden granted Hubbard's request, and the two met to discuss the incident.

Hubbard alleges that Warden Smith attempted to talk him out of filing his complaint – and that Warden Smith threatened him and told him that if he "pushed the issue they were going to bring charges up on me." *Id*. at 89. Hubbard's deposition testimony, however, contradicts this allegation. Despite the Warden's alleged threats, Hubbard filed his Request for Administrative Relief on October 1, 2009. It was received by the Carroll County Office of Administrative Remedy Program on October 5, 2009. Hubbard filed this *pro se* lawsuit on July 8, 2011. He named Chief O. Edwards, Lieutenant H. Smith, Warden A.L. Smith, Sargent Terry Williams and Carroll County as defendants in this lawsuit. Lieutenant H. Smith and Chief O. Edwards were dismissed on October 20, 2011 for failure to state a claim upon which relief could be granted.

## Neither Carroll County Nor the Defendants Sued In Their Official Capacities Are Liable

A county cannot be liable under Section 1983 unless the alleged constitutional violation proximately resulted from a policy or custom of the county. *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978); *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) (*en banc*), *cert. denied*, 472 U.S. 1016 (1975). The Fifth Circuit has defined such a policy as:

1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; and

2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984), *en banc, per curiam, cert. denied*, 472 U.S. 1016 (1985).

The plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). The plaintiff carries the burden to identify a county policy or custom which proximately resulted in the plaintiff's constitutional injury. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Further, a county may be held liable only for acts for which it is actually responsible. *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 215-16 (5th Cir. 1998). A county cannot be held liable solely because it employs a tortfeasor. *Id*. at 215. In other words, a county cannot be held liable under Section 1983 on a *respondeat superior* theory. *Id*.

In the present case, Hubbard has not shown that Carroll County has a policy or custom of using excessive force, denying medical care, or condoning retaliation for the filing of grievances. As such, Hubbard has not stated a claim against Carroll County regarding any of his claims. Further, to the extent that Hubbard has sued the defendants in their official capacities, such claims are not against the individuals themselves, but against the county. For the reasons discussed above, his claims against the county (and the defendants sued in their official capacities) are without merit and must be dismissed.

## The Individual Defendants Did Not Violate Hubbard's Rights

The proof presented to the court does not support Hubbard's claims under 42 U.S.C. § 1983 against the defendants in their individual capacities; thus, as set forth below, his claims against them are also without merit.

## Excessive Force

Hubbard alleges that the defendants used excessive force against him in violation of the Eighth Amendment prohibition against cruel and unusual punishment. A court must balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to

maintain prison order; to establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Factors which are relevant to this issue include, but are not limited to "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of the forceful response." *Rankin*, 5 F.3d at 107 n.5 (citation omitted).

A prisoner need not prove "significant" or "serious injury" in order to prevail in an Eighth Amendment claim of excessive force. *Hudson*, 503 U.S. at 7. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* A *de minimis* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation omitted). Moreover, "[i]n cases post-*Hudson*, 'certainly some injury is still required.'" *Rankin*, 5 F.3d at 108; *see also Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S. Ct. 1298, 122 L. Ed. 2d 688 (1993). A single incident of force or a single blow is *de minimis* and thus does not violate the Eighth Amendment. *Jackson v. Colbertson*, 984 F. 2d 699, 700 (5th Cir. 1993). For example, a sore, bruised ear lasting for three days is *de minimis. Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

In this case, defendant Williams believed he saw Hubbard in possession of a cell phone (which is contraband in prison) – and that he saw Hubbard toss the cell phone into a room full of inmates, who clamored for the phone. Though Hubbard denies actually having the cell phone in his possession, he does not dispute that Hubbard believed that he saw one. Williams restrained Hubbard for less than a minute, and Hubbard struggled briefly. Meanwhile, Lt. Gillon tried to locate the cell phone. Eventually, prison guards found *two* cell phones among those inmates. Hubbard admitted that he twice refused to obey Williams' commands and initially struggled against him. When Williams released Hubbard, he got up and walked away. Hubbard saw a nurse three days after the incident, and she could not find any evidence of injury. She prescribed Tylenol and released him from her care. He was examined by x-ray at Parchman as a follow-up, and the doctor found no evidence of injury. Hubbard's alleged injury is on par with Siglar's sore, bruised ear; as such, it is *de minimis*, and Hubbard's claim of excessive force is without merit. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *see also Luong v. Hatt*, 979 F.Supp. 481 (N.D. Tex. 1997) (Cuts, bruises, abrasions, etc., lasting only two or three days do not rise to the level of a constitutional injury.)

In addition, Williams' actions in attempting to confiscate contraband from an inmate were clearly a "good-faith effort to maintain or restore discipline," and not a malicious and sadistic attempt to cause harm. Thus, Hubbard's claim of excessive force fails for that reason, as well. *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993).

### No Evidence of Retaliation

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims

with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir.2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Hubbard must prove that he engaged in constitutionally protected activity (seeking redress for grievances), faced significant adverse consequences, and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).

Hubbard has shown only his personal belief that he has faced retaliation. Hubbard claims that defendant Smith threatened to retaliate against him by pursuing a rule violation for possession of a cell phone if Hubbard did not drop his excessive force allegations. Hubbard's deposition testimony reveals, however, that Warden Smith never told Hubbard not to participate in the grievance process. Instead, Smith told him "just do your regular ARP or whatever, but stop writing the sheriff's office and bringing this to the light of the sheriff." Pl. Depo. at 89-90. Warden Smith did not issue a threat; he merely admonished Hubbard to use the official Carroll County grievance process, as all inmates are required to do.

In addition, the sequence of events does not give rise to an inference of retaliation. Hubbard received the Rule Violation Report for cell phone possession on September 8, 2009. He attended the disciplinary hearing the next day, September 9, 2009, and was found guilty of possession of a cell phone. Thus, at that point, the entire incident had been resolved. Hubbard filed his grievance against Warden Smith on September 15, 2009, and he met with Smith some days later, at which time Smith allegedly threatened to pursue the rule violation – possessing a cell phone. As such, Smith could not rationally have threatened to pursue the rule violation further (as Hubbard claims), because the entire matter had already been put to rest. Hence, Hubbard cannot prove that Smith's actions were retaliation for the grievance. Smith's actions *after* Hubbard filed his grievance could not have affected Hubbard's punishment that was imposed *prior to* the filing of that grievance. It is a logical impossibility.

Hubbard has not named any discipline or punishment he received as a result of filing grievances during his stay at Carroll County. Indeed, he could not even remember what punishment he received for possession of a cell phone (loss of 6 months Trustee Time). Also, the punishment for the Rule Violation Report did not deter Hubbard from exercising his First Amendment right to seek

redress for grievances because he filed more grievances after the incident in question.  For these reasons, Hubbard's claim of retaliation is without merit and will be dismissed.

### Denial of Medical Care

Although not officially alleged in his complaint, Hubbard mentioned during his deposition that he was denied adequate medical care for three days following the incident.  The court will address this claim despite Hubbard's failure to mention it in his pleading.  Hubbard bases his claim for denial of adequate medical care solely on the fact that he did not receive treatment for three days after the incident.  The evidence suggests, however, that his alleged injuries did not require immediate treatment.  For several reasons, Hubbard has not shown that he had a serious medical need.  When he first saw a nurse, three days after the incident occurred, she could not find anything wrong with him.  Pl. Depo. At 77.  He was prescribed minor pain medication and released.  Again, when receiving follow up treatment at Parchman, doctors could find no signs of injury.  Pl. Depo. at 120-122.  According to all the medical staff who examined him, Hubbard simply did not have a serious medical need; as such, a three-day delay in medical treatment was reasonable.  It appears that Hubbard was simply frustrated that he did not get a chance to see the doctor right away, but such a claim does not meet the stringent standard for a claim of denial of medical care.

### Conclusion

In sum, none of Hubbard's claims has merit.  The motion [52] by the defendants for summary judgment will be granted, and judgment will be entered for the defendants.

**SO ORDERED**, this, the 27th day of March, 2014.

               /s/ Neal Biggers
               NEAL B. BIGGERS
               SENIOR U. S. DISTRICT JUDGE